## P. D. CRIM MOTOR COMPANY v. J. V. SHACKLETON.

Western Section.   March 1, 1929.

Taylor, Adams & Freeman, of Trenton, for plaintiff in error.
W. W. Powers, of Trenton, for defendant in error.

SENTER, J.   The parties will be referred to as in the court below, P. D. Crim Motor Company, plaintiff, and J. V. Shackleton, defendant. This suit was brought under Sections 4337 and 4338 of Shannon's Annotated Code, in a Justice of the Peace Court, resulting in a judgment for plaintiff for the sum of $490. On appeal to the circuit court the case was tried before the Circuit Judge and a jury. At the conclusion of all the evidence a motion for a directed verdict in favor of the defendant was sustained and judgment rendered in favor of defendant for the costs, and plaintiff's suit dismissed. From this action of the court, after a motion for a new trial had been overruled, the plaintiff prayed and was granted an appeal in the nature of a writ of error to this court, and has perfected the appeal, and has assigned errors.

The Justice of the Peace warrant averred that George Howell, in 1926 and 1927, was under a contract of employment and in the employ of plaintiff, and that the defendant knowingly hired, contracted with, decoyed and enticed away directly and indirectly the said George Howell from the employ of plaintiff, and that plaintiff was entitled to the service or employment of the said Howell by virtue of

a previous contract, and that said J. V. Shackleton, knowing this fact, hired, contracted with, decoyed and enticed away the said George Howell from the said P. D. Crim Motor Company and kept him in his employ for a long time and refused to discharge the said Howell so hired, contracted with and enticed away by him, after being notified that said George Howell was under said contract, resulting in damages to plaintiff in an amount under $500.

In disposing of the motion for a directed verdict the learned trial judge stated as follows:

"Gentlemen; the defendant has asked that I direct you to find for him because the plaintiff under the most favorable view of the case has not made out a case within the meaning of the statute upon which this cause is based. I am inclined to think the motion is well taken, for there was no such hiring of Mr. Howell by defendant as contemplated by the statute, so you will find for the defendant in this case. . . ."

It is shown by the record that in August or September, 1926, and for some months prior thereto, the P. D. Crim Motor Company, at Trenton, had in its employ George Howell as its chief mechanic in repairing automobiles and tractors. In August or September, 1926, the defendant, Shackleton, had the P. D. Crim Motor Company to send Howell to Rutherford to repair a farm tractor for him, and shortly thereafter Shackleton went to Trenton, and to the place of business of the P. D. Crim Motor Company, to settle the account for the work done on this tractor and was referred to Mr. Howell, the mechanic in the employ of the P. D. Crim Motor Co., and who did the repair work on the tractor. Mr. Shackleton went to the home of Mr. Howell and after discussing with him the amount of the charges for the work, suggested to Mr. Howell the matter of going to Rutherford and going into the garage and repair business at that place, stating, in substance, that a mechanic of his skill could do well at Rutherford, and then proposed that they go into business together at Rutherford. Howell did not entertain the proposition at first, stating to Shackleton that he was in the employ of the P. D. Crim Motor Co., and that he owed Mr. Crim of that concern, for money advanced to him for an operation for his wife, and other matters, and that he did not feel that it would be right to leave the employment of Mr. Crim under the circumstances. It appears that Mr. Crim was the owner of the P. D. Crim Motor Co. Some days later Mr. Shackleton again called on Mr. Howell at his home in Trenton and further pressed the matter of Howell going to Rutherford to engage with him in the garage and automobile repair business, and Mr. Howell again explained that he was in debt to the P. D. Crim Motor Co. and that he did not feel that it would be right under the circumstances for him to leave his employment. According to the evidence of Howell,

680

Shackleton told him that if he would go to Rutherford and engage in the proposed business with him, he would see that the indebtedness to P. D. Crim Motor Co. was settled, and upon this assurance, and upon the representations made that the proposed business promised better earnings and more profitable employment than he then had with P. D. Crim Motor Co., he accepted the proposition and he and Shackleton opened the business at Rutherford. It appears that Mr. P. D. Crim went to Rutherford and protested to Mr. Shackleton that he had Howell under contract of employment and that he had advanced money to Howell for the cost of an operation on his wife, and had also sold him an automobile, both accounts to be paid in monthly installments out of the wages of Howell. Later Mr. Crim gave written notice to Shackleton that he had Howell under contract of employment and in the notice stated as follows:

"I have given you oral notice, and wish now to give you written notice, that Mr. George Howell quit my employ to work for you, and he was under a valid contract with me.

"I have tried to adjust his indebtedness to me with you, but you declined, and this is to give you notice that if you continue to employ and work this man, while he is under a contract with me, I will look to you for my damages."

Mr. P. D. Crim stated in his evidence that he did not know the exact nature of the arrangement which Shackleton made with Howell, and did not know of the alleged partnership arrangement between Shackleton and Howell, but only knew that Shackleton had induced Howell to leave his employment and go to Rutherford as a mechanic. Shackleton denied that he had employed Howell, but insisted that they entered into a partnership relation by which they would engage in the garage and repair business at Rutherford and would share the profits equally, and that in pursuance of this agreement they bought out a garage and repair shop then engaged in business at Rutherford and for which they jointly executed their notes. We think it clear under the evidence that Shackleton and Howell became partners in the garage business at Rutherford, and in which Howell was the mechanic and Shackleton looked after the office, etc. The learned trial judge took the view that unless Shackleton had employed Howell, and that Howell left the employment of the plaintiff to enter into the employ of the defendant, plaintiff could not recover from Shackleton. This view of the case as taken by the trial judge is expressed by him in sustaining the motion for a directed verdict in favor of the defendant.

Appellant contends that the learned trial judge was in error in so holding, and that the construction as given to Sections 4337, 4338 by the trial judge to the effect that in order to make the defendant liable it would have to appear that the defendant had employed

Howell and that entering into a partnership agreement would not come within the provisions of the statute referred to.

The first section, 4337, reads as follows:

"It shall not be lawful for any person in this state knowingly, to hire, contract with, decoy, or entice away, directly or indirectly, anyone, male or female, who is at the time under contract or in the employ of another; and any person so under contract or employ of another leaving their employ without good and sufficient cause, before the expiration of the time for which they were employed, shall forfeit to the employer all sums due for service already rendered and be liable for such other damages the employer may reasonably sustain by such violation of contract."

The second section of the Act, being Section 4338, Shannon's Annotated Code, reads as follows:

"Any person violating the provisions of the first clause of the last section shall be liable to the party who originally had and was entitled to the services of said employee by virtue of a previous contract, (for) such damages as he may reasonably sustain by the loss of the labor of said employee; and he shall also be liable for such damages, whether he had knowledge of an existing contract or not, if he fails or refuses to discharge the person so hired, or to pay such damages as the original employer may claim, after he has been notified that the person is under contract, or has violated the contract with another person, which amount shall be ascertained and the collection enforced by action for damages. . . ."

It is the contention of appellee that the second section, 4338, when read in connection with the first section, 4337, shows that the statute contemplates the employment of one under contract with another, and that this is evidenced by the language of the second section which provides, "if he fails or refuses to discharge the person so hired. . . ."

Under this contention it is said by appellee that a contract of co-partnership is not embraced in the Act, because one partner could not discharge another, and that the Act under consideration only embraces contracts for employment of one who was previously employed by another, and who could, therefore, be discharged by the subsequent employer, after receiving notice. This was the view taken by the learned trial judge.

The Act in question specifically provides that it shall be unlawful for any person to employ, contract with, decoy, or entice away one who is under contract of employment with another. Section 4338 provides the penalty. We are of the opinion that to contract with, or to decoy away or to entice away, one who is under contract with another, constitutes a violation of Section 4337. We are further of

the opinion that a proper construction of the Act would render such person liable if he either employed, contracted with, decoyed or enticed away the employee of another. If such person did this with knowledge, at the time he either contracted with, employed, decoyed or enticed away such employee, he would be liable to the first employer for the damages set forth in the Act. If he employed the employee, without knowledge express or implied, that such employee was under contract with another, upon receiving notice from the first employer, if he then refused and failed to discharge the employee, he would be liable for the penalty.

If it be conceded, for the sake of argument, that to enter into a partnership with one who was in the employ of another, but without knowledge of said prior employment, such person would not be liable, because he could not meet the provisions of the statute by discharging an employee, yet, if this be true, and we do not mean to be understood as so holding, the fact remains that if such person contracted with, or enticed away the employee from his employer, with notice at the time, he would be liable for the damages resulting to the employer.

According to the evidence of George Howell, corroborated in part by his wife, Shackleton knew that Howell was in the employ of plaintiff at the time he proposed the partnership arrangement. Howell explained to him that he could not in fairness to plaintiff quit the employ of plaintiff, and on the occasion of the first approach by Shackleton declined to enter into the partnership agreement. According to this witness, Shackleton, with knowledge of his present employment to plaintiff, approached him at least on one more occasion, if not more, and sought to induce him to leave the employment of plaintiff and to go to Rutherford to engage with him in the garage and repair business, and by way of inducement agreed to take care of the indebtedness which Howell owed to plaintiff. This was certainly some evidence that the defendant Shackleton had knowledge that Howell was then in the employ of plaintiff, and that he did induce or entice Howell to leave said employment and to breach his contract with plaintiff.

We are of the opinion that the defendant would be liable to plaintiff under the provisions of the Statute for the damages resulting, if, with knowledge of his employment and contract of employment with plaintiff, enticed the employee to leave his employment and go to Rutherford to engage in a copartnership business with him, and in so doing held out inducements and promises to the employee which caused him to breach his contract of employment with plaintiff. This would be an "enticing away," in the sense of the statute. There being some evidence that defendant did entice Howell away from his employment with plaintiff, with knowledge of such employment, the case should have been submitted to the jury, and the learned trial

judge was in error in directing a verdict in favor of defendant. There was also some evidence upon which the jury could base a verdict of the damages sustained by plaintiff.

It results that the assignments of error are sustained and the judgment of the circuit court is reversed and the case remanded to the circuit court of Gibson county for a new trial. Appellee will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.